UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT BERNARD DAVIS, | No. 2:24-cv-01874 CKD |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding that his disability ended on March 1, 2020 under section 223(f) of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. ECF No. 9. The parties have filed cross-motions for summary judgment. ECF Nos. 11 & 16. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1979, applied for Supplemental Security Income (SSI) on September 11, 2014, alleging disability beginning March 1, 2012. Administrative Transcript ("AT") 250-259. In an ALJ decision dated September 7, 2016, the Commissioner found plaintiff disabled due to

1

the severe impairment of psychotic disorder, including symptoms of "auditory hallucinations, memory loss, depression, and difficulty managing anger" that have "persisted despite mental health treatment, including antipsychotic medication." AT 101, 102. The ALJ noted that "[m]edical improvement may occur with appropriate treatment" and recommended a continuing disability review in 24 months. Id. at 103.

On March 9, 2020, pursuant to a continuing disability review ("CDR"), the Commissioner found plaintiff was no longer disabled as of March 2020.[1] AT 129-132. Plaintiff requested reconsideration of the decision on March 16, 2020 (AT 133-34), and the Commissioner denied reconsideration on July 12, 2022. AT 189-191. Plaintiff requested a de novo hearing before an Administrative Law Judge (ALJ). AT 192. After holding hearings on February 14, 2023 and May 16, 2023, the ALJ concluded that plaintiff's disability ended on March 1, 2020. AT 18-28. Plaintiff challenges the ALJ's August 30, 2023 decision in the instant case.

In it, the ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated September 7, 2016. This is known as the 'comparison point decision' or CPD.
>
> 2. At the time of the CPD, the claimant had the following medically determinable impairment: psychotic disorder.
>
> 3. The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through March 1, 2020. Thus, the claimant's current impairment is the same as the CPD impairment.
>
> 4. Since March 1, 2020, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. Medical improvement occurred on March 1, 2020.
>
> 6. The medical improvement is related to the ability to work because, by March 1, 2020, the claimant no longer had an impairment or combination of impairments that met or medically equaled the same listing(s) that was met at the time of the CPD.

---

[1] "The Commissioner of the SSA must conduct periodic continuing disability reviews of persons who receive disability benefits." Lambert v. Saul, 980 F.3d 1266, 1268 (9th Cir. 2020), citing 42 U.S.C. § 421(i); 20 C.F.R. § 404.1590.

7. Since March 1, 2020, the claimant's impairment has continued to be severe.

8. After careful consideration of the entire record, the undersigned finds that, beginning on March 1, 2020, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, repetitive tasks; occasional public face-to-face interaction; occasional required decision making; occasional work setting changes; and no joint, shared, or tandem tasks with coworkers.

9. The undersigned makes no finding regarding the claimant's capacity for past relevant work.

10. On March 1, 2020, the claimant was a younger individual age 18-49.

11. The claimant has at least a high-school education.

12. Transferability of job skills is not material to the determination of disability[.]

13. Since March 1, 2020, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to form a significant number of jobs in the national economy.

14. The claimant's disability ended on March 1, 2020, and the claimant has not become disabled again since that date.

AT 19-28.

ISSUES PRESENTED

Plaintiff contends that the ALJ committed the following errors: (1) the ALJ erred by neither incorporating nor rejecting certain limitations opined by the psychological consultant; and (2) the ALJ improperly discounted the claimant's subjective symptom testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

"The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Opinion

Plaintiff argues that the ALJ erroneously discounted certain limitations in the June 2020 medical residual functional capacity assessment by psychological consultant Dr. L. Colsky. Dr. Colsky found plaintiff moderately limited in the following areas:

- the ability to maintain attention and concentration for extended periods;
- the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and
- the ability to interact appropriately with the general public.

AT 548-49. In all other assessed areas, Dr. Colsky opined that plaintiff was not significantly limited. Id. In conclusion, Dr. Colsky stated: "[Claimant] is capable of performing simple unskilled[;] also would suggest [claimant] would work best in low public contact setting." Id. at 550.

The ALJ evaluated this opinion as follows:

The undersigned gives great, but not full, weight to the opinion of

4

> State agency psychological consultant L. Colsky, M.D.[2] Dr. Colsky opined the claimant had experienced significant medical improvement but continued to have a severe impairment that limited the claimant to perform simple, unskilled work in a low public setting. The assessment that the claimant experienced significant medical improvement is consistent with the medical health treatment records noting the claimant is stable on medication and has generally normal mental health status examinations overall . . . The limitations opined by Dr. Colsky are supported by explanation and generally consistent with the medical evidence discussed above.
>
> However, the undersigned does not adopt the finding that the claimant is limited to unskilled tasks because 'unskilled' is not a vocational term. Nevertheless, the undersigned understands the term 'unskilled' in this case to mean simple, routine, repetitive tasks based on the evidence . . . of mild auditory hallucinations at times and mild anxiety.
>
> Similarly, the undersigned does not adopt the limitation of 'low public setting' because it is not defined. However, based on the medical and other evidence discussed above, the undersigned takes this to mean occasional public face-to-face interaction, occasional required decision making, occasional work setting changes, and no joint, shared, or tandem tasks with coworkers. Thus, this opinion is given great, but not full, weight.

AT 26.

Plaintiff argues that the ALJ did not address the opined moderate limitation in his ability to "complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Defendant points to Dr. Colsky's conclusion that, despite some moderate mental limitations, plaintiff was capable of performing simple work with little public contact, and argues that the ALJ properly incorporated the opined limitations into the RFC.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). "When an ALJ accords substantial or great weight to a physician's opinion, he must either incorporate their

---

[2] Citing AT 511-524 (June 26, 2020 psychiatric review technique), AT 526-528 (advisory comparison point decision), and AT 548-551(June 26, 2020 mental residual functional capacity assessment).

5

findings into the RFC or offer an explanation for why he chose not to accept them." Milavong v. Comm'r, No. 1:24-cv-00278-JLT-BAM, 2025 WL 553341, *4 (E.D. Cal. Feb. 18, 2025) (collecting cases).

Under Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008), "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." "However, courts have frequently distinguished Stubbs-Danielson as inapplicable to cases with opined limitations beyond concentration, persistence, or pace." Milavong, 2025 WL 553341, *6 (collecting cases). Here, one of the two limitations at issue concerns pace, but the other concerns the ability to complete a normal workday or workweek without interruptions from psychological symptoms. "Courts within this district have recently noted that the district court case law 'tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for the moderate limitations ... identified in interacting with supervisors and peers, handling work related stressors, maintaining regular attendance, and completing a normal workweek without interruption.'" Id. at *4 (emphasis added) (quoting Harrell v. Kijakazi, No. 1:20-cv-00614-GSA, 2021 WL 4429416, *6 (E.D. Cal. Sept. 27, 2021)). See also Morinskey v. Astrue, 458 Fed. Appx. 640, 641 (9th Cir. 2011) (ALJ erred by not making "findings setting forth specific, legitimate reasons for rejecting ... opinion that Morinskey's abilities to ... complete a normal work day or workweek without interruption from his bipolar disorder were moderately impaired").

Viewed in isolation, under this standard, the ALJ should have either explicitly adopted or given specific reasons for rejecting Dr. Colsky's opinion that plaintiff was moderately impaired in the ability to complete a normal workday and workweek without interruptions from psychological symptoms. However, from the narrative portion of the opinion, it is clear that Dr. Colsky himself (or herself) believed that plaintiff's moderate limitation in this area did not preclude certain types of work. When explaining his/her earlier findings in narrative form, Dr. Colsky opined that plaintiff "is capable of performing simple, unskilled" work "in [a] low public contact setting." AT 550.

Similarly, State agency psychological consultant Dr. Barbara Moura found plaintiff moderately limited in this area, but able to perform certain types of work. The ALJ gave "some weight" to Dr. Moura's February 2020 opinion, which found that plaintiff "is stable on current meds. Most recent exams are normal with no significant functional problems." She further found that plaintiff has "[s]ome lingering symptoms" but the medial evidence "shows significant medical improvement." AT 26, 82. Dr. Moura found that plaintiff's "psychosis and mood symptoms are now nonsevere. Anxiety appears severe and to cause at most moderate functional limitations." AT 83. Like Dr. Colsky, Dr. Moura found plaintiff moderately limited in the ability to complete a normal workday and workweek without interruptions from mental symptoms and to perform at a consistent pace without an unreasonable number of rest periods. AT 86. Explaining this limitation, Dr. Moura clarified that plaintiff was "limited to carrying out simple 1-2 step tasks." Id. Neither physician found plaintiff to require specific accommodations, e.g., frequent rest breaks, based on his moderate limitations in completing a normal workday or workweek.

The ALJ largely adopted Dr. Colsky's medical opinion. He translated the term "unskilled" in Dr. Colsky's narrative summary into the standard RFC limitation of "simple, routine, repetitive tasks." AT 26. He also translated the term "low public setting" in Dr. Colsky's narrative summary to mean "occasional public face-to-face interaction, occasional required decision making, occasional work setting changes, and no joint, shared, or tandem tasks with coworkers." AT 26. As to the moderate limitation on completing a normal workday or week without interruption, the ALJ appears to have relied on the narrative portion of the opinion summarizing Dr. Colsky's findings. See Shaibi v. Berryhill, 883 F.3d 1102, 1107 (9th Cir. 2017) (ALJ reasonably concluded plaintiff could perform essential workplace functions despite moderate limitations in light of "Summary Conclusions" doctor submitted along with written comments).

If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Here, Dr. Colsky's opinion (similar to Dr. Moura's) can be rationally interpreted to mean that, despite moderate limitations in the ability to

complete a normal workday and workweek without interruption from mental symptoms and to perform at a consistent pace, plaintiff could perform work consisting of simple, repetitive tasks with little public interaction, among other RFC limitations. "As we cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence." Shaibi, 883 F.3d at 1108.

### B. Subjective Symptom Testimony

Plaintiff argues that the ALJ erred in discounting his symptom testimony because the ALJ did not explain why specific evidence undermined his statements, as required.  Defendant counters that the ALJ's credibility discussion met the legal standard.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so." Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021)

(emphasis in original), citing Lambert, 980 F.3d at 1277–78.  This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]"  Lambert, 980 F.3d at 1277.  However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility.  Id. at 1277–78.

Here, the ALJ summarized plaintiff's testimony, including hearing testimony and written submissions, as follows:

> The claimant alleged that schizophrenia, bipolar, and anxiety continued to limit his ability to work.  Specifically, the claimant asserted that the impairments caused symptoms such as paranoia, daily panic attacks, anxiety while in public places, claustrophobia on long car rides, feeling as though he is trapped at times, feeling as though he needs to escape, depression, and poor memory.  He testified that he still heard voices, but he admitted that the auditory hallucinations improved with medication.  He indicated that he did not have visual hallucinations.  The claimant further noted that difficulty being around other people limited his ability to work.

AT 24.

The ALJ found that plaintiff's statements "about the alleged intensity, persistence, and limiting effects of [his] symptoms are inconsistent with the objective medical evidence."  AT 24.  Plaintiff asserts that the ALJ "failed to connect any specific portions of Davis' testimony to the parts of the record supporting the ALJ's decision" (ECF No. 11 at 18), but the court finds that the ALJ did explain why specific evidence undercut the above testimony.  First, as to the objective medical evidence, "mental health treatment records document little, if any, mention of these symptoms since March 1, 2020."  AT 24; see AT 22, 24 (mental status exams generally within normal limits with mild anxiety).  The ALJ continued:

> The claimant alleged experiencing anxiety while in public places and potential for panic attacks, but mental status examinations document generally only mild anxiety.  [Record citations.]  The claimant asserted having a bad memory, but the medical records show normal cognition with no limitations of memory noted.  [Record citations.]  Accordingly, the undersigned finds that the objective medical evidence does not support the level of symptomology that the claimant alleged[.]

AT 25; see also AT 24 (noting that "[t]he degree of self-asserted limitations is not supported by the objective medical evidence, which documents generally normal mental status examinations").

The ALJ then discussed the evidence that "treatment has been generally successful in controlling the allegedly disabling symptoms." AT 25. The ALJ cited a record of largely normal mental status examinations and plaintiff's testimony that medication has been helpful in treating his auditory hallucinations and denying auditory and visual hallucinations. Id.; see AT 42-44 (hearing testimony on hallucinations and medication effects).

The ALJ next discussed the evidence of plaintiff's daily activities, recounting plaintiff's testimony that "he did not do much other than go to the store once in a while and try to get out of the house to exercise." AT 24; see AT 46-48 (hearing testimony). However, the longitudinal record showed that plaintiff's reported activities included doing artwork, talking on the phone, fixing meals, attending to self-care, doing housework, and trying to find a job. AT 24-25. The ALJ reasoned:

> Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition. Further, the claimant's ability to go to the store even once in a while is inconsistent with the alleged severity of his anxiety while in public places, which he indicated caused panic attacks. The claimant's ability to participate in the above-listed activities is inconsistent with the claimant's statements concerning the alleged intensity, persistence, and limiting effects of his symptoms.

AT 25. "Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (superseded by statute on other grounds); see Ahearn v. Saul, 988 F.3d 1111, 1117 (9th Cir. 2021) (evidence of daily activities including shopping at stores, performing personal care, preparing meals, playing video games for sustained periods, and performing household chores supported ALJ's conclusion that claimant's depression and cognitive issues were not as severe as he claimed).

////

In sum, the ALJ provided more than an overview of the medical history and a boilerplate conclusion that plaintiff's testimony was inconsistent with the record.  Rather, he pointed to specific evidence and explained why it called certain of plaintiff's statements into question. Because the ALJ used the proper process and provided proper reasons, the court defers to his discretion on the credibility determination.

CONCLUSION

   IT IS HEREBY ORDERED that:

   1. Plaintiff's motion for summary judgment (ECF No. 11) is denied;

   2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted; and

   3. The Clerk of Court shall enter judgment for the Commissioner.

Dated:  August 1, 2025

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/vbdavis1874.ssi.ckd.cdr